## Cummins' Adm'r v. Walker's Committee.

(Decided Dec. 15, 1933.)

WADE H. LAIL and GENE LAIR for appellant.

CHAS. A. McMILLAN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Revers-ing.

Mattie Walker Cummins died a resident of Bourbon county, Ky., testate, in the spring of 1926, and her will was duly probated in the Bourbon county court. By the terms of the will she devised to Frank P. Walker, among other things, $6,000 in cash. A. H. Stone

qualified as administrator of decedent with the will annexed, and in April, 1927, the administrator paid to Frank P. Walker the $6,000 cash devised to him by the decedent. Within a few days thereafter, Frank P. Walker was tried and adjudged to be a person of unsound mind and his wife, Bessie Thomas Walker, was appointed as his committee and duly qualified as such. In July, 1927, Mrs. Walker, the committee, filed this action in the Bourbon circuit court against appellant as administrator of Mattie Walker Cummins, and against all the devisees of her will, for the purpose of settling the estate of decedent. There is only involved in this appeal the settlement of the administrator with Frank P. Walker respecting the $6,000 paid to him as above stated.

For cause of action against Stone, it is alleged, in substance, that Frank P. Walker was and had been a person of unsound mind many years before the inquest and was at the time of the settlement between him and appellant a person of unsound mind, and appellant had notice of the fact before he distributed to him his share of the estate of the testatrix, and that he (Walker), after obtaining possession of the money paid to him by the administrator, squandered and dissipated same. She further alleged that she was able to recover a certain portion of the money so squandered and uselessly spent by Walker, leaving a balance of approximately $1,600 which she had been unable to recover, and that appellant wrongfully paid this money to her ward, and asked that no disbursements by appellant so paid to Walker be allowed as a credit in his settlement of accounts as administrator.

Appellant filed a general demurrer to the petition and without waiving the demurrer filed his answer. The first paragraph of the answer denied that Frank P. Walker had been for many years before the inquest a person of unsound mind; denied that he had notice thereof, if he was insane; and further denied that Walker squandered the money paid to him. In the second paragraph he pleaded that Walker had not been adjudged to be a person of unsound mind at the time he paid to him the funds in question, and that Walker had the right to have the funds distributed to him pursuant to the provisions of the will. He further alleged that Walker had been for many years a person of er-

ratic and flighty behavior, which condition had existed and continued for 15 years prior to the inquest and lunacy proceedings brought about by his wife, the appellee, of all of which she had notice, and that she made no effort during all this time to cause him to be adjudged incompetent, and that by reason of her failing to do so she held Walker out to the world as a person of sufficient mental capacity to transact and carry on business; that during the said period of ten or fifteen years Walker had held various positions of trust and responsibility in Paris, Lexington, and Cynthiana, and permitted to collect his salaries and spend and use his money as he saw fit, and by reason thereof she now is estopped to complain of the transaction involved herein, and pleaded estoppel as a bar to any recovery against appellant. In paragraph 3 appellant stated that he employed competent legal counsel to advise him with respect to his legal rights and duties in his capacity as administrator and was acting under such legal advice when he paid to Walker the money due him under the will, which facts he further pleaded as a bar to recovery. In paragraph 4, appellant pleaded the fact that the testatrix, Mattie Walker Cummins, was for several years before her death a resident in the same house with Frank P. Walker and the appellee, Bessie Thomas Walker, and as such inmate of the house the testatrix had ample opportunity to observe Walker and conclude that he had sufficient mental capacity to handle this property, and with knowledge of such mental capacity, she devised to him this property without putting any restraint in the handling of it, and for this reason appellant had no choice but to carry out the directions of her will. In paragraph 5 he denied that Walker squandered and dissipated the funds paid to him, and further alleged that he spent such money in a way any ordinarily prudent person would have spent it.

The demurrer to the answer was overruled and all the affirmative matters therein were controverted. The demurrer to the petition was not ruled on by the court, but it is insisted for appellant that the demurrer to the answer should have been carried back and sustained to the petition. The petition as a whole is a suit for the settlement of the estate of decedent. There are many other items set up and referred to in the petition in

addition to the item involving appellant. If there was no cause of action stated in the petition as against appellant, his remedy was by motion to strike, instead of by demurrer to the petition as a whole. It follows that the chancellor properly overruled the demurrer.

The cause was referred to the master commissioner for settlement, and appellee filed settlement of his accounts as administrator, to which exceptions were filed. The cause was submitted to the chancellor, and judgment was entered sustaining plaintiff's exceptions to the settlement, and after allowing certain credits, he adjudged that appellee recover of appellant the sum of approximately $1,300, and from that judgment this appeal is prosecuted.

There is a number of alleged errors assigned and insisted on for reversal of the judgment.

The determinative questions herein are whether or not the evidence was sufficient to show: (a) That Frank P. Walker was a person of unsound mind at the time appellant paid him money in question; (b) if so, was his mental condition such that the appelant knew that he was incompetent to receive and handle his estate? It will be noticed, however, that Walker had not been adjudged a lunatic at the time appellant paid to him the money in question.

Mrs. Walker testified that she told appellant not to pay the money to Walker without first notifying her a few days in advance, and that if Walker was in a disinterested state of mind he would be all right, but if he was in a state of excitement he would squander and waste the money as he had done on previous occasions, and that appellant promised her that he would "be glad to do anything he could for her." In describing Mr. Walker's mental condition, she said that his disease "worked in cycles," i. e., he was either in a state of disinterest or melancholy, for possibly a year or so; then he would go to into a state of exultation and throw money away that came into his hands. She stated that she later wrote Mr. Stone a letter in which she told him, in substance, that Mr. Walker's mental condition had become much worse and that she was writing him to remind him of his promise he had made to her, that he would not turn the money over to Walker without letting her know in advance; that appellant did not re-

spond to the letter and she later went to Cynthiana to see him; that appellant said to her: "Mrs. Walker, I knew before I had talked with him three minutes that he was all off and I made up my mind then not to give him a cent of the money." She further stated that appellant told her about several peculiar things Mr. Walker said and did. She further stated that she told appellant that Dr. Daugherty had informed her that Mr. Walker would never be well according to his idea and that he was not capable of handling money; that she further informed appellant that Walker had squandered and wasted large sums of money within the past few years. Mrs. Walker is corroborated in her testimony with respect to Walker's mental condition by doctors and other people who had had an opportunity to closely observe him.

Mr. Stone, the appellant, stated that Mr. Walker had called on him a number of times with reference to a settlement of the property devised to him by the testatrix. He further stated that about two weeks before the settlement, Walker came to the bank and talked with him and said he was feeling much better and he would like to have a settlement; that Walker appeared to be in normal condition and he observed nothing wrong with him. Appellant admitted that he received the letter from Mrs. Walker in which she made some reference to the condition of her husband's mind, but he did not understand just what she meant by it, and that she asked him in the letter not to give Walker any money until he let her know about it; that she did not state in the letter that Mr. Walker was insane, but only stated that at times he appeared to be in a state of excitement or depression. Appellant further stated that after he received the letter from Mrs. Walker, she came to the bank to see him, and he told her that Mr. Walker had been to see him two or three times and kept insisting on a settlement and that he did not see how he was going to avoid it; that he could not keep him out of his money; but she did not ask him not to make a settlement. He denied making the statement to Mrs. Walker that he said on one occasion when Mr. Walker had called on him that he knew or noticed that "he was all off" or that he said that he would not give him a cent of the money. He further stated that he made inquiry of people who knew Walker, regarding

his mental condition, and that he received no information that he was regarded as an insane man and that he personally observed nothing in his conversations and dealings with him to warrant such conclusion; that Walker discussed business matters very sensibly and as any other person would ordinarily discuss such matters. Appellant further stated that Mr. Lail, his attorney, called him by telephone and told him that Mr. Walker had come to him and asked him if he would advise appellant to make settlement; that Mr. Lail said that he had known Mr. Walker for a number of years and thought a settlement was due him and advised him to make the settlement; that he made the settlement within three or four days thereafter, which settlement was made at Mr. Lail's office.

If the transaction between Walker and appellant had involved a trade or other transaction whereby appellant received from Walker money or other thing of value, a different question might have been presented. But Walker parted with nothing nor did appellant receive anything in return for the money paid Walker. He merely paid to Walker the money which belonged to him under the will. It could not be said that there was undue advantage taken of Walker or that he was cheated or defrauded. If Walker had been adjudged to be a person of unsound mind before appellant made settlement with him, then appellant would have done so at his peril. Once a person has been adjudged insane, such person is, prima facie, non sui juris until the contrary has been adjudged by appropriate proceedings for that purpose. But in cases where a person has not been adjudged a lunatic, a transaction with such person will not be annulled by the courts unless the insanity of such person be so obvious that any and all ordinarily prudent minded people would take notice thereof. But if the degree or extent of insanity is such only that ordinarily prudent minded people will differ on the question as to whether such person is sane or insane, and the transaction is in good faith and no undue advantage or fraud shown, such transaction will not be interrupted by the courts; and this rule prevails in some instances, even though the person has been previously adjudged insane, depending upon the evidence in each case.

In case of Smith's Committee v. Forsythe, 90 S. W.

1075, 1076, 28 Ky. Law Rep. 1034, the court expresses the rule in this language: "The contract of a person of unsound mind is voidable only, not void. Whether it will be avoided at the instance of his committee will depend on the circumstances of the case." In Lexington & E. Ry. Co. v. Napier's Heirs, 160 Ky. 579, 169 S. W. 1017, 1018, the court said: "The deed was not necessarily void, only voidable, and, unless there was unfairness or injustice * * * the deed should not be set aside."

There is no claim or allegation that there was any undue advantage taken of Walker or that he was cheated or defrauded. It is admitted that he received all that was due him. The only complaint is that because of his state of mind, he extravagantly and indiscreetly spent the money.

In case of Johnson's Committee v. Mitchell, 146 Ky. 382, 142 S. W. 675, 677, Johnson was adjudged to be insane in April, 1890, and was sent to the insane asylum, Lexington, Ky., where he remained until August, 1895, when he was discharged and returned to his home. No subsequent inquest was held and he never had been adjudged competent after his return from the asylum. From 1897 to 1903 Johnson made deeds to various tracts of land to divers persons. In 1908 a committee was appointed for Johnson and instituted suit for the cancellation of the various deeds which he had made after his return from the asylum, on ground that he was incompetent. There was much evidence pro and con with respect to the condition of his mind. A number of witnesses testified that Johnson appeared to be a person of ordinary intelligence and mind after his return from the asylum, while others testified that he never had much brightness of mind and was below the average in ability even before he was adjudged insane and after he was returned from the asylum. There was evidence to the effect that Johnson indulged in strange illusions and on one occasion had said that " 'he had made the world,' and that he 'spat upon the ground, and it turned green.' " Various people who dealt with Johnson, including those who purchased various tracts of land from him, knew that he had been adjudged insane, but testified that he had been trading and transacting business as other sane or prudent people, and his family had permitted him to do so. Some of the

grantees testified that because of the fact that he had been adjudged insane that they made special inquiry and examinations respecting his mental capacity before the deeds were made, and that from the information they received and from their personal observation of him they came to the conclusion that he had ample capacity to make the deeds. This court held Johnson to be competent and the deeds valid.

The case, supra, in our view, is much stronger than the one at bar. As has been said, Walker had not been adjudged insane before the settlement and the only information appellant had regarding his alleged abnormal condition of mind was from appellee, and she did not say in exact language that he was insane, but only indicated that he was of an erratic and flighty disposition. Appellant made inquiry of people who knew Walker, but received no information that he was regarded as an insane man, in the ordinary acceptance of the term, but only erratic and indiscreet. It is further shown that appellant acted under the advice of Mr. Lail, his attorney, who well knew Walker, and Mr. Lail advised appellant to make the settlement. It is further shown that Walker had been in this alleged state of mind for a number of years, during which time he had been employed in different capacities and received his wages or salaries, which he spent and used as any other person, all of which he was permitted to do by his wife and other members of the household who knew his state of mind and habits, and according to the evidence of Mrs. Walker, she knew that he had always spent money lavishly and indiscreetly. There was no action taken to restrain him or have him adjudged incompetent until after appellant had paid to him the money in question and he had spent a large portion of it. Then it was that his committee, appellee, took steps to have him adjudged incompetent and to recover from appellant the money he had spent.

While the evidence strongly tends to show that Walker was somewhat mentally abnormal, it is not shown that his insanity, if he was insane, was such that all prudent minded people would observe it or consider him incapable of handling his estate. We are strengthened in this conclusion by the further fact that the testatrix had lived in the household with Walker for many years previous to the making of her will and

knew his mental attitude and reckless disposition, but did not, by the terms of her will, place any restraint upon the property devised to him. This fact fairly warrants the inference that the testatrix did not consider him an insane man or incapable of handling his estate, otherwise, evidently, she would have made necessary provisions in the will for the purpose of conserving and protecting his estate, instead of devising it to him absolutely.

In view of the facts and all the circumstances disclosed by this record, we are constrained to the conclusion that appellant acted within his legal rights in making settlement with Walker, and, therefore, not responsible for the manner in which he spent or handled his money, and that the judgment of the chancellor is against the great weight and preponderance of the evidence and it is not sustained thereby.

For reasons indicated, the judgment is reversed and remanded for proceedings consistent with this opinion.